# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, DC

## UNITED STATES
### v.

## Lance W. WOOLDRIDGE

## Airman, U.S. Coast Guard

## CGCMG 0133
## Docket No. 1092
## 1 December 1998

General Court-Martial convened by Commander, Seventeenth Coast Guard District, Juneau, Alaska. Tried at Seventeenth Coast Guard District, Juneau, Alaska, on 27-28 August 1997.

| | |
|---|---|
| Military Judge | CAPT Robert W. Bruce, USCG |
| Trial Counsel | LCDR Donald J. Rose, USCG |
| Assistant Trial Counsel | LCDR Gregory T. Nelson, USCG |
| Individual Military Counsel | LT Keith Celebrezze, JAGC, USN |
| Appellate Defense Counsel | LT Sandra Selman, USCGR |
| Appellate Government Counsel | LT Susan Polizzotto, USCGR |

### BEFORE
### PANEL TWO

### BAUM, KANTOR, AND McCLELLAND
Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by a general court-martial before a military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, he was convicted of the following offenses: two specifications of unlawful entry, two specifications of indecent assault, and one specification of assault consummated by a battery, in violation of Articles 128, and 134 of the Uniform Code of Military Justice (UCMJ). The judge sentenced Appellant to reduction to pay grade E-1, forfeiture of $450.00 per month for eight months, confinement for eight months, and a bad conduct discharge. The convening authority approved the sentence as adjudged, but, pursuant to the terms of the pretrial agreement, suspended all confinement in excess of six months for twelve months from the date sentence was imposed. Before this

Court, Appellant has assigned one error, that the military judge s plea inquiry was factually insufficient by failing to negate the affirmative defense of mistake of fact that was raised by Appellant s answers.

## Facts

The facts, as developed by the judge s inquiry and a stipulation of fact, reveal that on the date of the offenses Appellant returned to his barracks complex between 0130 and 0200, after an evening of drinking. Instead of going to his room, which was in barracks 3, he went to the second floor of barracks 4, where all the enlisted women lived. Finding an unlocked door, he entered and awakened one of the two women in the room by tapping on her shoulder and then pushing his knee against her leg, while telling her to move over so he could get in bed with her. His actions accounted for the assault and battery offense and one of the unlawful entry findings. On hearing noises, the roommate awoke and Appellant was told to leave, which he did ultimately, after first using their bathroom.

He then proceeded to another unlocked door, two rooms down the hall, and committed the second unlawful entry offense, by entering without permission. Appellant walked to a bed, where the lone occupant was sleeping, and sat on the floor staring at her until she awoke with a start. Neither she nor Appellant knew each other, so she asked who he was and what he was doing in her room. Appellant gave his name and where he worked and asked if he could sleep there. When she said no, he asked if he could use her bathroom, which she allowed. When he was finished, he returned to her bed and asked again if he could sleep on the floor. She told him no and asked him to leave. He used her bathroom again, returning to her bedside, where he asked several times if he could get into her bed. Each time she said no. After using the bathroom a third time, he returned and climbed onto the bed on top of the covers and started kissing her. She requested that he leave, and he went to the bathroom a fourth time.

Upon returning from the bathroom, Appellant started removing his clothes. She told him not to undress, that she was not looking at him, and asked him to leave. He, nevertheless, stripped down to his socks and got into bed with her again, this time under the covers. He began to kiss her and placed her hand on his erect penis twice. Each time she withdrew her hand as soon as he removed his hand, while continuing to tell him no and asking him to leave. These acts constituted one of the indecent assault offenses. The other indecent assault occurred later, after a fifth trip to the bathroom. When Appellant returned to the bed, he began kissing her again and inserting his tongue into her mouth. He then moved to the foot of the bed, pressed his face into her crotch, and began to lick her shorts. She told him to stop and he did, but he then tried to pull her shorts down, which she prevented by holding onto the waistband. He next moved her shorts and panties aside and licked the exposed area of her crotch, thereby committing the second indecent assault offense. At that point she moved away from him and finally convinced Appellant that she really meant for him to leave, as she had been telling him all along. After using the bathroom for a sixth time, Appellant finally dressed and left. He was in the victim s room approximately three hours, during which time she did not attempt to leave or call for help.

## Issue of Mistake of Fact Defense

In addition to this factual account, Appellant freely acknowledged his guilt to the offenses, following the judge s explanation of their elements. Moreover, he told the judge that, while he thought that the victim was consenting at the time, he had since concluded that she did not consent to his actions. An honest and reasonable belief that the victim is consenting will establish a mistake of fact defense for indecent assault. While indecent assault entails one element requiring specific intent, the lack-of-consent element of this offense is a general-intent element, hence the requirement that a belief in consent must be both honest and reasonable under the circumstances, in order to raise a defense of mistake of fact. *U.S. v. Peterson*, 47 M. J. 231, 234-235 (1997); *U.S. v. Garcia*, 44 M.J. 496, 498 (1996).

The discussion following RCM 910(e) states:

> If any potential defense is raised by the accused s account of the offense or by other matter presented to the military judge, the military judge should explain such a defense to the accused and should not accept the plea unless the accused admits facts which negate the defense.

Here, the judge did not explain to Appellant the mistake of fact defense and what that defense requires. However, the judge did ask Appellant whether he thought that his belief that the victim was consenting at the time was reasonable. Appellant responded that in retrospect he recognized that such a belief was not reasonable. Appellant now asserts that the military judge erred by accepting such a conclusion, without first advising him of the mistake of fact defense, and then by not developing facts through further inquiry that would have excluded that defense. Absent those steps, Appellant contends the military judge erroneously accepted his guilty pleas without an adequate factual basis, in violation of Article 45, UCMJ. In support of this argument, Appellant points to the following excerpts from the plea inquiry, that he says raised the mistake of fact defense, which was not countered factually:

> MJ: Now on either of those occasions, did Petty Officer [T])consent to your touching her like that; by licking her vagina or placing her hands on your
>
> penis?
>
> ACC: After both incidents she indicated to me that no, she did not want--she
>
> did not consent to that.
>
> MJ: And beforehand did she consent to that?
>
> ACC: At that point in time I--I had thought--I had thought that it was

consensual, as I said before, sir. But at this particular time in retrospect

I see that I was mistakenly thinking that.

MJ: So in--in retrospect you--you admit that beforehand she didn t do

anything that-that could reasonably be considered consent?

ACC: Yes, sir, I ve--admit there was--it was unreasonable to think that it was

a consensual-type situation at that point in time.

Record at 35.

MJ: Now, do you think that a reasonable person, based on the information

that you had at the time that you licked the vagina of Petty Officer [T]*)*

and placed her hand on your penis, would have believed that--that she

was consenting to--to your doing that?

ACC: I have no idea, sir.

MJ: Was there any lack of information, like a lack of her--lack of her

resistance or lack or her--lack of saying no to you, that together with the

other circumstances would cause a reasonable person to believe that--that

she was consenting?

ACC: Sir, I believe there--there was not a lot of resistance, but the fact that she

stated on a couple of occasions, I think it was even at the Article 32

[pretrial investigation], that she just--she did not realize what was

happening or what my intentions were and after she did realize then she

pulled away and she said no. And after, I guess in retrospect looking at the

situation, I realized that it was unreasonable to think it was con--it was a

consensual-type thing.

Record at 39.

## Discussion

Appellant argues that the facts of record are at best ambiguous, susceptible to supporting either a belief in consent or lack of consent, and that they are, therefore, insufficient to negate the potential defense. The facts that Appellant sees as supporting a reasonable belief in consent are: (a) he was in the room with the victim for three hours, (b) the victim allowed him to use the bathroom at least six times, (c) the victim never left the room during any of his trips to the bathroom, (d) the victim never used the phone to call a watchstander or a friend, (e) the victim never called out for help, and (f) the victim engaged in several conversations with Appellant. According to Appellant, the victim s ambiguous and puzzling behavior, when coupled with Appellant s sworn answers about his mistaken belief at the time and the silence of his stipulation of fact on the question of criminal *scienter*, factually support the reasonableness of a mistake of fact defense to the indecent assaults. Accordingly, despite Appellant s stated conclusion at trial that his belief in consent was unreasonable, he contends that the judge s failure to support that conclusion with adequate facts raises substantial questions in law and fact about the providence of his pleas. As a result, he says the indecent assault findings of guilty are untrustworthy and should be set aside.

The Government, on the other hand, submits that the record as a whole is more than adequate to uphold Appellant s pleas, showing in many verbal and nonverbal ways the victim s lack of consent to Appellant s sexual advances. The Government points to the fact that the victim did not know Appellant, that, upon awakening to find this stranger in her room, she repeatedly told him to leave, that she answered no to all his sexual advances, that she removed her hand each time he placed it on his penis, that she held on to her waistband when he tried to pull her shorts off, and that she tried to back away from him when he began licking her genital area. The Government argues that these facts of record are sufficient to establish that the victim did not consent and that they support Appellant s acknowledgment that his contrary belief at the time of the offenses was unreasonable.

It may be puzzling that the victim failed to take affirmative action, either by leaving the room or calling for help, during one of Appellant s many visits to the bathroom in the course of the three hours spent in her room. Nevertheless, her verbal and nonverbal responses, as set out by the Government, leave no doubt that she did not consent to Appellant s acts. There is no requirement that a victim call for help or try to leave her own room in order for there to be an offense of indecent assault. If her failure to take such steps somehow caused Appellant to believe that she was consenting to his actions, he never gave that as the

reason for his belief. Instead, he said he thought there was something consensual in her voice. Record at 23. On reflection, however, he stated that it was not reasonable to think that way. We agree. Any such belief on that basis was unreasonable in the face of the victim s verbal protestations and physical responses to Appellant s actions. The facts developed during the plea providence inquiry, coupled with Appellant s characterization of his own belief in consent as unreasonable, allowed the judge to properly conclude that a mistake of fact defense had not been raised. *U.S. v. Peterson*, supra; *U.S. v. Garcia*, supra. Accordingly, there was no reason to explain that defense to Appellant or to make additional factual inquiry. Appellant s assignment of error is rejected.

## Conclusion

After review of the record pursuant to Article 66, UCMJ, we have determined that the findings and sentence are correct in law and fact and on the basis of the entire record should be approved. Accordingly, the findings and sentence, as approved and partially suspended below, are affirmed.

Judges KANTOR and McCLELLAND concur.

For the Court

/S/
*Brian Johnson*
Clerk of the Court